427 So.2d 509 (1983)
James C. RILEY, Plaintiff-Appellant,
v.
Danny McGEE, Defendant-Appellee.
No. 82-449.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1983.
Rehearing Denied March 22, 1983.
*510 McHale, Bufkin & Dees, Louis D. Bufkin, Lake Charles, for plaintiff-appellant.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Bernard H. McLaughlin, Jr., Lake Charles, Pugh & Boudreaux, Vincent J. Saitta, Lafayette, for defendant-appellee.
Woodley, Barnett, Cox, Williams & Fenet, James E. Williams and Terry Thibodeaux, Lake Charles, for intervenor-appellee-appellant.
Before GUIDRY, CUTRER and LABORDE, JJ.
GUIDRY, Judge.
This is a suit for damages arising out of a shooting incident which occurred on January 10, 1979, at an automobile auction in Lake Charles, Louisiana. James C. Riley was injured when a .38 caliber revolver discharged, striking him in the abdomen. He instituted this suit against Danny McGee, who at the time of the incident, was in possession of the revolver. Additionally made defendants were State Farm Fire & Casualty Company (hereafter State Farm), McGee's homeowner insurance carrier; and, Travelers Insurance Company (hereafter Travelers), which provided garage liability coverage to McGee's business, D & M Auto Center. Riley had received worker's compensation benefits as a result of his injuries from Liberty Mutual Insurance Company, who intervened, seeking to recover by preference the amount paid Riley. At the close of the plaintiff's case-in-chief, State Farm moved for a directed verdict. The trial judge granted the motion holding that McGee was engaged in a business pursuit at the time of the shooting and therefore there was no coverage under State Farm's homeowner policy. The trial judge ultimately granted judgment in favor of all defendants, dismissing plaintiff's action with prejudice. Riley and Liberty appealed, however Liberty's appeal was never perfected.
The issues on appeal are (1) whether the trial judge erred in concluding that the plaintiff failed to prove by a preponderance of the evidence that his injuries were caused by the negligence or intentional act of McGee; and, (2) whether the trial judge was clearly wrong in finding that the defendant was engaged in a business pursuit at the time of the shooting.
The evidence discloses that Riley and his family had been friends with McGee and his family for several years. They visited each other's homes on a regular basis. Both Riley and McGee were in the used car business *511 and both were present at the Lake Charles auto auction on January 10, 1979. Riley was the used car manager for Cagle Chevrolet and had brought several vehicles to the auction to be sold for his employer. McGee, who owned a used car lot, intended to meet a friend from Houston, Texas at the auction. McGee was carrying a large amount of cash with him which was to be used for purchasing cars. He was also carrying a .38 caliber revolver. McGee encountered Riley at the auction and asked him to show him some of the Cagle vehicles. Riley had been instructed by his employer not to sell any cars to McGee across the counter, that is, other than in the auction ring. Riley was in the process of showing McGee a pick-up truck and, while he was leaning over into the truck cab, the loaded revolver which McGee carried in his pocket discharged and struck Riley near the midline of his abdomen. There was no bullet hole or powder burn in McGee's pocket. There was no argument or provocation prior to the shooting. There were no eyewitnesses to the shooting other than plaintiff and defendant. Neither was able to give visual accounts or explain exactly how the revolver discharged. The bullet traveled subcutaneously across the abdomen and exited from Riley's left side, causing an abrasion to his left arm and leaving a bullet track just beneath the surface of the skin. No vital organs were struck. After Riley was shot, he, McGee and two other salesmen went to a nearby lounge to discuss the situation. At the lounge, they had several drinks and agreed that the shooting would be explained as accidental. They then returned to the auction. After an hour, Riley went to the hospital where he remained for seven days. He was treated for the gunshot wound as well as for injuries resulting from an unrelated automobile accident which occurred the night before the shooting.
In his petition, Riley alleged that the discharge of the weapon was due either to the negligence or the intentional act of McGee. The trial judge, in his written reasons for judgment, stated:
"There is not a scintilla of evidence to show the shooting was intentional. Likewise there is no evidence that the gun discharged because of substandard or negligent conduct of McGee."
In dismissing plaintiff's suit, the trial court concluded that the discharge of the weapon was an accident and that McGee was not responsible. We reverse.
McGee was in possession of a loaded firearm in a public place. There is no question that Riley was injured and that such injuries are the result of the discharge of a firearm which was under the direct and exclusive control of McGee. In Cambridge Mutual Fire Ins. Co. v. State Farm, etc., 405 So.2d 587 (La.App. 3rd Cir.1981), at 589, we stated:
"The law is settled that persons who use or handle inherently dangerous agencies, substances, or instrumentalities such as explosives, electricity, firearms, combustibles and fireworks which might endanger persons or property are held to a high or extraordinary degree of care." (Emphasis added)
However, there is no direct evidence or allegations of specific acts of negligence on the part of the defendant. Because of this lack of direct proof as to what caused the discharge of the weapon, the trial court held that the plaintiff had not proved by a preponderance of the evidence that the defendant's negligence caused the plaintiff's injuries. Our review of the evidence leads us to apply the doctrine of res ipsa loquitur in evaluating liability. This rule of evidence is properly applied at the termination of a case after all the evidence is submitted.
Res ipsa loquitur is a rule of circumstantial evidence, whereby negligence is inferred on the part of the defendant because the facts indicate this to be the more probable cause of the injury in the absence of other more plausible explanations. Where this principle is properly applied, the circumstantial evidence indicates that the injury was caused by some negligence on the part of the defendant, without necessarily proving just what negligent act caused the injury. Boudreaux v. American Insurance *512 Co., 262 La. 721, 264 So.2d 621 (La. 1972) on rehearing.
The practical effect of this doctrine was stated by the Supreme Court in Larkin v. State Farm Mutual Auto. Ins. Co., 233 La. 544, 97 So.2d 389 (La.1957), at 391:
"A determination of a proper instance for application of the principle of res ipsa loquitur has been the subject of volumes of discussion by learned jurists and legal scholars, who have been at pains to point out that the maxim means only that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that the rule rests for its justification upon the common experience that accidents from such causes do not commonly occur in the absence of negligence; and that it is the lack of direct evidence indicating negligence on the part of the defendant as the responsible human cause of a particular accident which actually furnishes the occasion and necessity for invoking the rule in its strict and distinctive sense. It is generally conceded that res ipsa loquitur in no way modifies the rule that negligence will not be presumed. The application of the rule does not, therefore, dispense with the necessity that the plaintiff prove negligence, but is simply a step in the process of such proof, permitting the plaintiff, in a proper case, to place in the scales, along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence, thereby obtaining an advantage and placing on the defendant the burden of going forward with proof to offset that advantage. When all the evidence is in, the question is still whether the preponderance is with the plaintiff. All that is meant by res ipsa loquitur is `that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant's duty.`4" (footnote omitted)
The essential elements necessary for application of this doctrine are succinctly stated in Falcon v. Bigelow-Litpak Corp. et al., 356 So.2d 507 (La.App. 1st Cir.1977), at 510:
"The doctrine encompasses the following essentials: (1) a superior knowledge on the part of the defendant(s) as to the cause of the accident; (2) the absence or unavailability of direct evidence of negligence; (3) the existence of a sufficient duty on part of the defendant(s) to use due care; and (4) proof of the accident or injury and the defendants relation thereto." (citation omitted)
In this case, the attending circumstances are sufficient to invoke the rule of res ipsa loquitur. There is a lack of direct evidence indicating negligence on the part of the defendant. McGee was in possession of a loaded firearm in a public place and is held to a high degree of care. The injuries are the result of the discharge of this firearm. The accidental discharge of a firearm will not commonly occur in the absence of negligence of the one having control of the weapon. The cause of the accident is more properly within the knowledge of the defendant, who had exclusive control over the instrumentality causing the injury. The plaintiff was in no position to observe the defendant or his actions prior to shooting. He had been leaning into the cab of the truck. As he backed away from the cab, he was shot. The plaintiff is therefore entitled to an inference of negligence.
The defendant had the burden of going forward to offset the inference of negligence by bringing forward evidence that would exculpate him from liability, which he failed to do. There was no attempt by the defendant to show that he had exercised due care in the handling of the firearm nor did he show that the discharge was *513 due to the fault of another. The only other plausible explanation of the injury offered at trial is that the shooting was intentional. The trial court found that there was not a scintilla of evidence to show that the shooting was intentional. We agree. Furthermore, the defendant could hardly suggest that the possibility that the shooting was intentional should exculpate him from liability.
We, therefore, conclude that the plaintiff has proved by a preponderance of the evidence that the accident was due to some omission of the defendant's duty of care in handling an inherently dangerous instrumentality.
We find no merit to plaintiff's contention that the trial judge committed error in his finding that the defendant was engaged in a business pursuit at the time of the shooting and thus, no coverage was afforded McGee under the State Farm homeowner's policy. McGee owned a used car lot. He testified that at the time of the shooting he was at the Lake Charles auto auction to buy cars. He had bought and sold cars at the auction on many previous occasions. He commonly used cash to buy cars and on the evening in question, he was carrying approximately $30,000.00 on his person. When Riley was shot, McGee was examining one of the vehicles which Riley was selling that night. The record fully supports the trial judge's conclusion that defendant was engaged in a business pursuit at the time of the shooting and that, therefore, defendant's homeowner insurer, State Farm, did not provide coverage under its policy for the injuries complained of by the plaintiff.
We next consider quantum. Plaintiff's only injury was a skin wound, which was due to the subcutaneous bullet track. Plaintiff experienced some pain. Although Riley remained in the hospital for seven days, the duration of hospitalization for treatment of the gunshot wound was only five days. There was no follow-up treatment. The record reveals that a majority of the damages, which the plaintiff claims, is for embarrassment, humiliation and mortification. Although the evidence indicates that the plaintiff has and is experiencing a certain amount of melancholy and depression, from the record we are unable to contribute this condition solely to the shooting incident. The record reflects that after the accident the plaintiff was affected by several unrelated stress producing situations, including the break up of his marriage. Dr. Morin, a psychiatrist who examined the plaintiff testified that his prominent preoccupation centered around his loss of income, loss of personal possessions and loss of his wife. He found no evidence of traumatic neurosis. We nonetheless consider that as a result of the accident, plaintiff suffered some minimal emotional distress. We consider that an award to plaintiff of $5,000.00 in general damages for pain, suffering and emotional distress is appropriate.
The testimony of Joe Cagle, Jr., the owner and general manager of Cagle Chevrolet, established that Riley began employment with Cagle on January 3, 1979 as a used car manager. He worked on a salary and commission basis. After the shooting incident he missed approximately 20 days of work. The record does not reflect how much of this time was attributable to the injuries suffered by him in an unrelated car accident and how much was attributable to the gunshot wound.
Our law does not require plaintiff to establish his loss in an exact amount in order to be entitled to an award for loss of income. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). We consider that the medical testimony is to the effect that the gunshot wound would take 10 days to two weeks to heal. We attribute 14 of the 20 days of work missed to the gunshot wound. Based on Mr. Riley's pay record for a five month period, we compute the average daily net income to be $70.00 a day and award $980.00 for loss of wages. Plaintiff's medical expenses attributable to the gunshot wound were stipulated to be $899.75. His total special damages are therefore $1,879.75.
*514 For the reasons assigned, the judgment appealed from is affirmed insofar as it dismisses plaintiff's suit against State Farm, and reversed insofar as it dismisses plaintiff's suit against the other defendants. It is now ordered, adjudged and decreed that there be judgment in favor of James C. Riley and against Danny McGee and Travelers Insurance Company, in solido, in the sum of $6,879.75 with legal interest from date of judicial demand and all costs of this suit.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.