MANUEL ANTHONY CADENA, a Minor, by his Mother and Next Friend, Areli Moreno, *et al.*, Plaintiffs-Appellants, v. CHICAGO FIREWORKS MANUFACTURING COMPANY, Defendant (The City of Chicago Heights, Defendant-Appellee).

First District (3rd Division)    No. 1—95—3531

Opinion filed June 30, 1998.

Clifford Law Offices (Robert A. Clifford, Charles E. Tannen, and Robert P. Sheridan, of counsel), and Karline & Fleisher, both of Chicago, for appellants.

Kralovec & Marquard, Chartered, of Chicago (Nancy J. Arnold and David T. Nani, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

Plaintiffs Manual Anthony Cadena, Larisa Cadena, Andres Cadena, and Marcella Garcia (Cadenas) and plaintiffs Dale Baikauskas and Christopher Baikauskas (Baikauskases) appeal from an order of the circuit court granting summary judgment in favor of defendant City of Chicago Heights (City) pursuant to sections 4—102 and 5—102 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/4—102, 5—102 (West 1992)) in the Cadenas' and Baikauskases' actions against it based upon claims of negligence, wilful and wanton conduct, *res ipsa loquitur*, and strict liability under the ultrahazardous activity doctrine. On appeal, plaintiffs contend that the activities undertaken by the City during a Fourth of July fireworks display did not constitute police or fire protection services under sections 4—102 and 5—102, respectively, of the Tort Immunity Act and, therefore, the City was not immune from liability, and the City was engaged in an ultrahazardous activity in displaying fireworks, thereby also precluding any immunity under the Tort Immunity Act. For the reasons set forth below, we affirm.

On July 3, 1991, Chicago Fireworks Manufacturing Company, which is not a party to this appeal, conducted a Fourth of July fireworks display at Bloom Township High School in the City of Chicago Heights. The City's administrator, Enrico Doggett (Doggett), was in charge of coordinating all activities surrounding the fireworks display. Chicago Fireworks was responsible for putting on the display on July 3, 1991, and had been responsible for the display from 1976 to 1992. Doggett had been involved in the City's Fourth of July fireworks event in his capacity as the City's administrator since 1975. Doggett's duties included ensuring that, because of the large crowds, estimated at between 12,000 and 15,000, the police were on the site for security and fire department personnel and emergency vehicles were on the site in case of an accident. Doggett was also in charge of overseeing food vendors, a petting zoo, rides for children in attendance, and entertainers. Doggett coordinated his activities with Joseph Piunti

(Piunti), the chief of the City's fire department, Larry Heusman (Heusman), the chief of the paid-on-call division of the fire department, and the assistant chief of the police department. Doggett was further responsible for ensuring that the traffic department, which was a division of the police department, had barricades on the site. The barricades were set up by members of the paid-on-call division of the fire department. The procedures for setting up the fireworks display and the barricades had been essentially the same since Doggett began as the City's administrator in 1975, and "everyone knew where the barricades went, *** how it was supposed to be set up." According to Doggett, he was unaware of the procedures set out in the "National Fire Protection Association" safety guidelines, but assumed that either the fire protection officer or assistant chief of the fire department would have told him if there were any codes that had to be followed. On July 3, 1991, the "Fire Chief" wanted the western border of the barricades moved farther away from the ignition site of the fireworks display and Doggett agreed to the change.

Doggett also stated that after an accident during the 1975 fireworks display, which was held at the Bloom Township High School football field, the display was moved in 1976 to a large field at the high school where the display in 1991 was subsequently held. A perimeter was also established in 1976 and the perimeter remained basically the same from then on, with minor variations that were "sometimes made by *** [the owner of Chicago Fireworks], sometimes by [Doggett], sometimes by the fire chief." Neither Heusman nor Piunti was aware of any codes or regulations controlling the distance the barricades were to be placed from the ignition site of the fireworks display in 1991.

On July 3, 1991, it rained at approximately 6 p.m. and, while it was raining, workers from Chicago Fireworks placed tarps over the fireworks. During the fireworks display, one of the fireworks misfired and landed in the crowd which had gathered to view the display, injuring the Cadenas and Baikauskases. On July 9, the Cadenas filed a complaint against Chicago Fireworks, alleging that it was negligent based on Chicago Fireworks' act of firing fireworks in such a manner as to cause the fireworks to explode near the spectators, failure to properly protect the spectators, and failure to warn the spectators of the danger that portions of the fireworks would fall into the spectators.

On December 30, 1991, the Baikauskases filed a complaint against Chicago Fireworks and the City. Count I of the complaint alleged that Chicago Fireworks was negligent in permitting the fireworks to explode within the crowd of spectators, failing to adequately protect

the spectators, and permitting the fireworks to be ignited in an unsafe condition; counts II and III alleged that the City was negligent and acted in a wilful and wanton manner in designating a spectator viewing area too close to the point of ignition of the fireworks display and in placing barricades too close to the ignition area of the fireworks display.

On February 6, 1992, the Cadenas filed a second amended complaint, adding the City as a defendant, and alleging, in count I, that the City and Chicago Fireworks were negligent in causing the fireworks to explode in the vicinity of the spectators, failing to protect the spectators from the ignited portions of the fireworks, failing to warn the spectators of the danger, permitting the fireworks to be ignited when wet, placing the barricades too close to the ignition area of the fireworks, and designating a spectator viewing area too close to the ignition area of the fireworks. Count II alleged that the City acted in a wilful and wanton manner with a reckless disregard for the safety of the spectators in designating a spectator viewing area too close to the ignition area of the fireworks, placing barricades too close to the ignition area of the fireworks, failing to warn spectators that ignited portions of the fireworks would or could fall into the spectator area and failing to properly protect the spectators from ignited portions of the fireworks. Count III alleged that the City and Chicago Fireworks were negligent and liable under the family expense act for the same reasons as stated in count II. Count IV and V alleged that Chicago Fireworks was liable under strict liability and products liability, respectively, in using an unreasonably dangerous and defective firework. Count VI alleged that the City and Chicago Fireworks were negligent under a theory of *res ipsa loquitur* for the same reasons as stated in counts II and III. The remaining counts of the second amended complaint, VII through XXII, repeated counts I through VI for each individual Cadena plaintiff.

On February 11, 1992, the Baikauskases filed a motion to consolidate their case with the Cadenas' case, which the trial court granted. The City subsequently filed a motion to dismiss count II of the Baikauskases' complaint alleging negligence, and a motion to dismiss counts I, III, VI, VII, IX, XII, XIII, XIV, XVII, XVIII, XIX, and XXII of the Cadenas' second amended complaint pursuant to section 2—615 of the Civil Practice Act (Act) (735 ILCS 5/2—615 (West 1992)), arguing that it was immune from both the Baikauskases' and Cadenas' negligence claims pursuant to sections 3—106, 3—108 and 3—109 of the Tort Immunity Act (745 ILCS 10/3—106, 3—108, 3—109 (West 1992)), which provided immunity for injuries sustained on public property used for recreational purposes, failure to supervise activity of use

of public property, and injuries sustained by any person who participated in a hazardous recreational activity, respectively.

In response to the City's motion to dismiss count II of their complaint, the Baikauskases argued that because the City was involved in a nongovernmental function when it oversaw the fireworks display, it was not protected by the Tort Immunity Act. The Baikauskases further argued that because the City was engaged in an ultrahazardous activity in sponsoring the fireworks, it was strictly liable for any injuries caused by that activity.

In the City's reply to the Baikauskases' response to its motion to dismiss count II of their complaint, it argued that any distinction between governmental and nongovernmental activities was irrelevant for purposes of the Tort Immunity Act. The City also argued that the Baikauskases' complaint failed to allege that the City was liable under an "ultrahazardous activity" theory; rather, their complaint merely alleged that the City was negligent and engaged in wilful and wanton conduct.

During the pendency of plaintiffs' case in the trial court, another case arising from the same incident, McLellan v. Chicago Fireworks Manufacturing Co., No. 91 C 4295 (*McLellan*), was filed in the United States District Court for the Northern District of Illinois. The *McLellan* plaintiffs alleged that the City was liable to them based upon the grounds of negligence, *res ipsa loquitur*, and wilful and wanton misconduct. On September 21, 1994, the *McLellan* court granted the City's subsequent motion for summary judgment based on sections 4—102 and 5—102 of the Tort Immunity Act. In its order, the *McLellan* court, relying on *Dockery v. Village of Steeleville*, 200 Ill. App. 3d 926, 558 N.E.2d 449 (1990), stated:

> "The *Dockery* court reasoned that the crowd control and traffic management at the Steeleville Fourth of July celebration was a police function that has been recognized as an important part of police service. Accordingly, like the Village of Steeleville, the City of Chicago Heights 'is immune from liability for failure to provide adequate police protection or service.'
>
> * * *
>
> The reasoning of *Dockery* applies with equal force to the Chicago Heights fire department. Therefore, it too is immune from liability for failure to provide adequate fire protection and service.
>
> Plaintiffs maintain that defendant's arguments are inapplicable because there is no immunity for injuries caused by an inherently and abnormally dangerous or ultrahazardous activity. In light of *Dockery*, we must summarily reject plaintiffs' argument. The *Dockery* court had the opportunity to hold that fireworks displays are intrinsically and inherently dangerous, and did not do so. We can go no further than *Dockery*.

* * *

Since all three counts of the plaintiffs' amended complaint as they relate to the City of Chicago Heights are concerned with inadequate police and fire services, the City is entitled to summary judgment in its favor and against plaintiffs on Counts 1 (*Negligence*), Count 2 (*Res Ipsa Loquitur*), and Count 3 (*Wilful and Wanton Misconduct*) of the '*Amended Complaint At Law*.' " (Emphasis in original.)

On March 25, 1994, the Cadenas filed a response to the City's motion to dismiss counts I, II, III, VII, X, XV, XVII, XXII, and XXIV of their complaint, which were based on claims of negligence and wilful and wanton conduct, arguing that the Tort Immunity Act did not provide the City protection from negligence claims arising from its conduct. The Cadenas further argued that because a similar motion to dismiss filed by the City in *McLellan* had been denied by the federal court, the City's motion should also be denied in the present case. The Cadenas also adopted the arguments set forth in the Baikauskases' response to the City's motion to dismiss, *i.e.*, that the City was involved in a nongovernmental function when it oversaw the fireworks display and, therefore, was not protected by the Tort Immunity Act, and the City was engaged in an ultrahazardous activity in sponsoring the fireworks and, therefore, the City was strictly liable for any injuries and not protected under the Tort Immunity Act.

On November 9, 1994, the City filed a motion for summary judgment against the Cadenas and Baikauskases. The City argued that it was immune from liability pursuant to sections 4—102 and 5—102 of the Tort Immunity Act and, as a result, it could not be held liable for failure to provide police protection or fire protection. The City contended that the deposition testimony of Piunti, acting fire chief for the City, Heusman, the paid-on-call fire chief for the City, and Doggett, the City's administrator, showed that the City was only providing police and fire protection services for crowd control, prevention of fire, and preparation for the possibility of fire or injuries to the spectators present. The City further argued that, under *Dockery*, the City was immune from liability for providing police and fire protection during the fireworks display. The City further argued that summary judgment should be granted to it based on the *McLellan* court's finding that the City was immune from liability to persons injured at the July 3, fireworks display pursuant to sections 4—102 and 5—102 of the Tort Immunity Act.

In response to the City's motion for summary judgment, the Cadenas argued that: the City was engaged in an ultrahazardous activity and was therefore strictly liable for any injuries caused by the

fireworks display; the City was not immune from liability under the Tort Immunity Act because it arbitrarily designated an area for the crowd to be located and it voluntarily assumed a duty to protect the crowd from a "hazardous recreational activity"; the City was not immune from liability under sections 3—106 and 3—109 of the Tort Immunity Act, which provide immunity for injuries sustained on public property used for recreational purposes, and injuries sustained by any person who participated in a hazardous recreational activity, respectively; and "[t]he fact that the Federal court had decided a similar issue in a related case was completely unrelated and irrelevant to the case at bar." On the same day, the Baikauskases filed a response to the City's motion for summary judgment, adopting the Cadenas' response, and arguing that the City was not protected by governmental immunity because the City failed to raise governmental immunity in its answer and had admitted that it was not engaged in a governmental activity at the time of the accident.

In reply, the City contended that: Illinois case law did not support plaintiffs' argument that the use of fireworks was an ultrahazardous activity; it did not participate in any ultrahazardous activity because it merely sponsored the fireworks display; it had not predicated its motion for summary judgment on section 3—109 of the Tort Immunity Act and, therefore, the Cadenas' argument relating to that issue was meaningless; and pursuant to sections 4—102 and 5—102 of the Tort Immunity Act and the *Dockery* decision, it was immune from liability for any injuries caused by the fireworks display on July 3, 1991.

After a hearing on the City's motion for summary judgment, the trial court granted the motion, stating:

"The city seeks summary judgment on the ground that it is immune from liability for failure to provide adequate police and fire protection under sections 4—102 and 5—102 of the Illinois Tort Immunity Act.

Section 4—102 provides immunity for a local public entity's failure to provide adequate police protection or service.

The plaintiff's [*sic*] complaint is based upon the failure of Chicago Heights in providing adequate police and fire protection services.

Crowd control and traffic management in a citywide celebration are included in the phrase, 'police protection or service.'

Therefore, the City of Chicago Heights is immune from liability for failure to provide adequate police protection or service.

5—102 establishes immunity from liability from the Chicago Heights Fire Department or failure to provide adequate fire protection service.

Therefore, Chicago Heights is immune from liability for failure to provide adequate fire protection under section 4—102 [*sic*].

Plaintiffs argue that this immunity does not apply because fireworks displays are inherently and abnormally dangerous and ultrahazardous activities.

However, Dockery versus Village of Steeleville, 200 Ill. App. 3d, rejected that argument. Therefore, the defendants' [*sic*] motions for summary judgment are granted."

This appeal followed.

Plaintiffs first contend that the activities undertaken by the City during the July 3, 1991, fireworks display did not constitute police or fire protection services protected under sections 4—102 and 5—102, respectively, of the Tort Immunity Act and, therefore, the City was not immune from liability. Plaintiffs argue, *inter alia*, that: the Tort Immunity Act must be strictly construed against the City to preclude providing immunity to the City; the City was not engaging in mere crowd control and fire safety; an interpretation of the City's activities as crowd control and fire protection would be overly broad and improperly provide the City with absolute immunity; and the City was acting in a ministerial capacity and thus not protected by the Tort Immunity Act.

The City contends, relying on *Dockery* and *McLellan v. City of Chicago Heights*, 61 F.3d 577 (7th Cir. 1995), that sections 4—102 and 5—102 of the Tort Immunity Act provide absolute immunity for its activities during the fireworks display.

Plaintiffs counter that sections 4—102 and 5—102 do not provide absolute immunity because several exceptions to those sections, specifically the special duty doctrine and wilful and wanton conduct by a local governmental entity, apply to preclude immunity under the Tort Immunity Act. Plaintiffs' further argue that if section 4—102 provides the City with immunity for its negligent and wilful and wanton conduct, the City is not immune because it was engaged in an ultrahazardous activity.

■ "In reviewing a trial court's entry of summary judgment, the only issue on appeal is whether 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' 735 ILCS 5/2—1005(c) (West 1992). A court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. Review of summary judgment rulings is *de novo*." *Barnett v. Zion Park District*, 171 Ill. 2d 378, 384-85, 665 N.E.2d 808 (1996).

■ "The Tort Immunity Act adopted the general principle that local governmental units are liable in tort, but limited this liability with

an extensive list of immunities based on specific government functions." *Barnett v. Zion Park District*, 171 Ill. 2d at 386. "[T]he [Tort Immunity] Act is intended to 'protect local public entities and public employees from liability arising from the operation of government.' (Ill. Rev. Stat. 1987, ch. 85, par. 1—101.1(a).)" *West v. Kirkham*, 147 Ill. 2d 1, 11, 588 N.E.2d 1104 (1992). "[B]ecause the [Tort Immunity] Act is in derogation of the common law, it must be strictly construed against the local public entity." *Clark v. City of Chicago*, 88 Ill. App. 3d 760, 764, 410 N.E.2d 1025 (1980).

■ Section 4—102 of the Tort Immunity Act provides:

"Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." 745 ILCS 10/4—102 (West 1992).

Section 5—102 of the Tort Immunity Act provides:

"Neither a local public entity that has undertaken to provide fire protection service nor any of its employees is liable for an injury resulting from the failure to suppress or contain a fire or from the failure to provide or maintain sufficient personnel, equipment or other fire protection facilities." 745 ILCS 10/5—102 (West 1992).

■ "Police protection services" under section 4—102 have been found to include the following activities: police officers who were searching for a missing person (*Platacis v. Village of Streamwood*, 224 Ill. App. 3d 336, 340, 586 N.E.2d 564 (1991)); the failure to prevent injuries not inflicted criminally (*Platacis*, 224 Ill. App. 3d at 340, citing *Dockery*, 200 Ill. App. 3d at 929); the supplying of streetlights (*Burley v. On the Waterfront, Inc.*, 228 Ill. App. 3d 412, 592 N.E.2d 623 (1992)); the supplying of crossing guard service (*Goebig v. City of Chicago*, 188 Ill. App. 3d 614, 544 N.E.2d 1114 (1989)); and "crowd control and traffic management at a city-wide celebration" involving a fireworks display (*Dockery*, 200 Ill. App. 3d at 929).

In *Dockery*, the Village of Steeleville, through its police department, voluntarily assumed the duty to maintain crowd control and traffic management for spectators at a fireworks display presented by the American Legion Post. A spectator was injured when a firework misfired and landed in the crowd. The injured spectator then sued the City of Steeleville, alleging that the city was negligent. The trial court granted the city's subsequent motion for summary judgment based on section 4—102 of the Tort Immunity Act. On appeal, in affirming the trial court, the *Dockery* court stated:

"We think that crowd control and traffic management at a city-wide celebration are included in the phrase 'police protection or service' as found in section 4—102 of the Tort Immunity Act because, in many communities, these functions are recognized as important parts of police services. Section 4—102 provides immunity for a local public entity's failure to provide adequate police protection or service. Plaintiff's complaint does not allege that the Village committed some *affirmative act* such as directing plaintiff to an unsafe area to watch the fireworks display. Instead, the complaint alleges that the Village provided inadequate police protection to its citizens in that it allowed them to watch, or failed to prevent them from watching, the fireworks display from an unsafe area." (Emphasis added.) *Dockery*, 200 Ill. App. 3d at 929.

■ In the present case, plaintiffs attempt to distinguish *Dockery*, arguing that the "dangerous situation" in *Dockery* was "created by another," the American Legion, whereas here the fireworks display was "put on" by the City, *i.e.*, the City sponsored and actively participated in the presentation and "public relations" surrounding the July 3 fireworks display. We conclude, however, that these "acts" did not constitute an affirmative act changing the nature of the City's conduct in setting up the barricades for crowd control purposes. By setting up the barricades, the City clearly was engaged in crowd control in placing the barricades, an act that the *Dockery* court held to be "police service" under section 4—102 (*Dockery*, 200 Ill. App. 3d at 929), setting the parameters of where the spectators could not go, rather than affirmatively directing them to an unsafe area. Thus, we find that the City's conduct falls within those "police services" protected under section 4—102 of the Tort Immunity Act and, as in *Dockery*, we hold that the City was immune from plaintiffs' claims of negligence under section 4—102. Additionally, because plaintiffs do not specifically separately argue the City's lack of immunity under section 5—102, we need not address the scope of the City's immunity under that section.

We briefly note that plaintiffs' argument that this interpretation would provide the City with absolute immunity is without merit. While section 4—102 provides the City with immunity from negligence claims in providing police services, the City cannot benefit from the Act's protection if the City's conduct was wilful and wanton pursuant to section 2—202 of the Tort Immunity Act (745 ILCS 10/2—202 (West (1992)),[1] or a special relationship existed between the police and the injured party. See *Doe v. Calumet City*, 161 Ill. 2d 374, 641 N.E.2d 498

[1]In a footnote in their reply brief, plaintiffs state that "if the court should, however, find that the conduct of the Defendant in connection with the

(1994); *Fatigato v. Village of Olympia Fields*, 281 Ill. App. 3d 347, 666 N.E.2d 732 (1996); *Goebig*, 188 Ill. App. 3d 614, 544 N.E.2d 1114. We further briefly note that the City also erroneously relies on *Platacis* for the proposition that the immunity provided in section 4—102 is absolute, provides a blanket grant of immunity for failure to provide police protection, and does not differentiate among theories of liability, such as negligence or wilful and wanton conduct. While it is true that the *Platacis* court stated that "section 4—102 of the Act *** provides for immunity from liability both for ordinary negligence and for wilful and wanton misconduct" (*Platacis*, 224 Ill. App. 3d at 340), our supreme court has, subsequent to the *Platacis* decision, clarified conflicting appellate court decisions and held that section 4—102 does not provide immunity for a local governmental entity or its employees where a plaintiff either proves facts that show the existence of a special duty and proves simple negligence or proves wilful and wanton conduct alone. *Doe*, 161 Ill. 2d at 390; see also *Fatigato*, 281 Ill. App. 3d at 353-56.

We also reject plaintiffs' argument that the City's conduct in setting up the barricades was ministerial in nature and that the City, in promoting and sponsoring the fireworks display, created a hazardous condition, both of which are not encompassed in the immunity provided pursuant to section 4—102. More specifically, plaintiffs argue in their opening brief "that while the decision by the City to undertake a fireworks display *** may have been a discretionary action, the implementation of that activity was not a matter of discretionary authority and necessitated a duty upon the City to exercise its performance with all reasonable care in a non-negligent manner."

The City contends that a " 'discretionary/ministerial' distinction [should not] be imposed upon § 4—102" because "there is nothing in the language of *** [section 4—102] that would warrant doing so."

---

fireworks display is subsumed within the phrase 'police protection service' and that no ultrahazardous activity exception applies, the trial court's decision was still in error as it improperly dismissed the wilful and wanton counts of Plaintiffs' complaints (counts that, it will be noted, were not even part of Defendant's motion but rather were disposed of by the court at the hearing when asked by Defendant if the ruling applied to the wilful and wanton counts) because if such activities are to be regarded as 'police protection service' then § 2—202 of the Tort Immunity Act applies and specifically excepts wilful and wanton conduct from immunization." Beyond this statement, plaintiffs fail to make specific legal argument and to cite to authority. Accordingly, plaintiffs have waived this issue. *Saldana v. Wirtz Cartage Co.*, 74 Ill. 2d 379, 385 N.E.2d 664 (1978).

The City also points out that "immunity for discretionary acts *** appears in § 2—201 of the Act," and argues that "[t]he *grant* of immunity in one provision of the Act cannot reasonably be read as a *limitation* on immunities provided in other provisions of the Act." (Emphasis in original.)

Plaintiffs counter, in their reply brief, that the City "misapprehends the nature of Plaintiffs' argument concerning the distinction the courts have made between discretionary and ministerial actions of government." Rather, plaintiffs maintain that their argument is that "the discretionary/ministerial distinction is used by the courts as a tool of statutory construction" in order "to separate out those kinds of activities that could conceivably come under the relevant statutory provision by a broad interpretative reading of the language, but which are not properly the subject of the immunity, as such a reading to include those kinds of activities would tend to swallow the exception to the general rule of liability established by the Tort Immunity Act, and thereby render the entire provision effectively meaningless." Quoting *Eck v. McHenry County Public Building Comm'n*, 237 Ill. App. 3d 755, 604 N.E.2d 1109 (1992), plaintiffs further maintain that " 'it is apparent from a review of the statute as a whole that the legislature contemplated the discretionary/ministerial distinction when it drafted the provisions of the Act.' " In support of their argument, plaintiffs cite to a number of cases involving the applicability of section 2—202 immunity to public employees for acts or omissions "in the execution or enforcement of any law." 745 ILCS 10/2—202 (West 1992).

We find that notwithstanding plaintiffs' assertion that they do not seek to impose a "discretionary/ministerial" exception to section 4—102 immunity, to use this dichotomy as a "tool" in construing that section would have the same effect as imposing it as an exception, which we deem inappropriate. In *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 380-81, 687 N.E.2d 1042 (1997), involving the application of section 3—108(a) immunity to a local public entity or public employee for an "injury caused by a failure to supervise an activity on or the use of any public property" (745 ILCS 10/3—108(a) (West 1992)), the court rejected the rationale of the *Eck* court underlying the *Eck* court's conclusion (which was based upon that court's belief "that the Tort Immunity Act must have *implicitly* retained [the] common law discretionary/ministerial distinction because that distinction 'continues to be recognized' in the cases" (emphasis in original) (*Epstein*, 178 Ill. 2d at 380, quoting *Eck*, 237 Ill. App. 3d at 762-63)), that "supervision of preplanned construction activities is a ministerial task for which liability must be imposed regardless of the immunity granted

in section 3—108(a)" (178 Ill. 2d at 380). The *Epstein* court found the *Eck* court's analysis "seriously flawed," stating that "[t]he *Eck* court's importation of the common law discretionary/ministerial distinction into section 3—108(a) is not appropriate," and that "[t]here is nothing in section 3—108(a)'s language which even remotely suggests that it does not apply to ministerial tasks" and that such a limitation could not be read into that section. *Epstein*, 178 Ill. 2d at 380-81. The *Epstein* court further compared the immunity provided for in sections 2—109 and 2—201 for discretionary functions with the immunity provided for in section 3—108(a), and stated that "[t]hese immunities operate independently of one another," that "the discretionary immunity provided for in sections 2—109 and 2—201 does not in any way operate to remove or otherwise limit the immunity granted in section 3—108(a) for the failure to supervise," and that, "[m]ore particularly, there is no language in section 2—109 or 2—201 that imposes liability for ministerial tasks, so those provisions cannot be used to override section 3—108(a)'s grant of immunity for the failure to supervise." *Epstein*, 178 Ill. 2d at 381-82. The *Epstein* court therefore overruled *Eck* and its progeny for this reason and others. *Epstein*, 178 Ill. 2d at 382.

In the case at bar, we find the *Epstein* court's analysis applicable to any attempt to import the discretionary/ministerial distinction, as the *Eck* court did regarding section 3—108(a), into section 4—102. Moreover, as discussed above, the exceptions to section 4—102 immunity are well settled, *i.e.*, wilful and wanton conduct pursuant to section 2—202 or the judicially created special duty exception.

Plaintiffs further urge this court to declare that not all "police protection service" activities, such as routine elements of a police officer's official duties, are provided immunity under section 4—102, as have our courts in cases involving section 2—202 of the Act (immunity provided to public employees for their acts or omissions in the execution or enforcement of any law). Plaintiffs further argue that the City was engaged in an ultrahazardous activity, which should be an exception to section 4—102 immunity. We need not make such determinations, however, because it is clear, as discussed above, that crowd control is conduct provided immunity pursuant to section 4—102 and, as more fully discussed below, the displaying of fireworks is not an ultrahazardous activity.

Lastly, as to this issue, plaintiffs, relying on *Snyder v. Curran Township*, 167 Ill. 2d 466, 657 N.E.2d 988 (1995), and *Eck*, argue that "even were it so that the vernacular inclusion of crowd control in the term 'services' [under section 4—102] were justified, the sponsoring and promotion of a fireworks display *** cannot withstand such tenu-

ous inclusion," and, quoting *Snyder*, state that " 'when a city creates a hazardous condition and someone is injured as a consequence it must respond in damages, just as others are required to do.' " We find, however, that *Snyder* is distinguishable because that case involved the applicability of sections 2—109 and 2—201 (immunity for discretionary functions) in conjunction with the Illinois Vehicle Code and the Illinois Manual on Uniform Traffic Control Devices, which prescribed "tailored statutory and regulatory guidelines" as constraints on the decisions of officials in erecting traffic signs. *Snyder*, 167 Ill. 2d at 474-75 In the present case, as discussed above, sections 2—109 and 2—201, pertaining to discretionary acts, are not involved here but, rather, section 4—102 activities. Moreover, even were we to consider plaintiffs' argument, they have failed to cite to any specific governmental regulation or code with which the City failed to comply. Plaintiffs merely make a passing reference in their brief to the safety guidelines established by the National Fire Protection Association, without indicating whether it is a private, federal or local governmental organization and that the City was required to follow the Association's guidelines. Plaintiffs also merely stated at oral argument that the Fireworks Regulation Act of Illinois (425 ILCS 30/1 *et seq.* (West 1992)) and the Fireworks Use Act (425 ILCS 35/1 *et seq.* (West 1992)) were the statutes the City was required to follow "before any fireworks display can be done," without directing this court to any specific language in those provisions. Accordingly, there is no indication that the City violated any specific mandate. Further, as also noted above, *Eck* has been overruled specifically with respect to the importation of a discretionary/ministerial distinction to section 3—108(a) of the Act, and, as we have determined in the present case, that distinction is inapplicable to section 4—102. Plaintiffs therefore have failed to cite to any controlling authority in support of their "promoting" and "sponsoring" argument as a basis for an exception to the City's immunity under section 4—102.

Plaintiffs next contend that the display of fireworks is an ultrahazardous activity and urge that this court declare "the display and demonstration of fireworks before a crowd of spectators to be an ultrahazardous activity and an exception to section 4—102 immunity." Plaintiffs argue that fireworks displays are an ultrahazardous activity because (1) the detonation of explosives has been found to be ultrahazardous and fireworks are a form of explosives; (2) the absolute liability which attaches to employers or property owners authorizing inherently dangerous activity is directly analogous to the operation of the ultrahazardous doctrine and property owners have been found vicariously liable for fireworks displays on their property; (3) the Il-

linois legislature has regulated the use of fireworks; and (4) other jurisdictions have found fireworks displays to be ultrahazardous either explicitly or implicitly. Plaintiffs also contend that pursuant to *Clark*, a local governmental entity is not protected under sections 4—102 and 5—102 when engaged in an ultrahazardous activity.

■ The City argues that this issue is not properly before this court because plaintiffs did not plead an ultrahazardous claim in their complaints; only one jurisdiction has found fireworks displays to be ultrahazardous, and the case which decided that issue is distinguishable from the case at bar; and under Illinois law and sections 519 and 520 of the Restatement (Second) of Torts, the presentation of a fireworks display is not an ultrahazardous activity. Restatement (Second) of Torts §§ 519, 520 (1977).

Plaintiffs counter that this issue is properly before this court because their ultrahazardous activity claim was adequately pled before the trial court, the City responded to the ultrahazardous activity issue in its pleadings and the trial court made an explicit ruling against finding fireworks displays an ultrahazardous activity. Plaintiffs also contend that under Illinois Supreme Court Rule 366 (155 Ill. 2d R. 366), this court can grant plaintiffs the opportunity to amend their pleadings to include an ultrahazardous claim.

The record shows that while plaintiffs did initially plead an ultrahazardous activity claim, they supported that claim with allegations of negligence instead of allegations of strict liability and allegations that fireworks are an ultrahazardous activity. The City, however, failed to object to plaintiffs' insufficient pleading and the trial court ruled that the displaying of fireworks is not an ultrahazardous activity. Because the defect complained of in plaintiffs' complaints was not objected to in the trial court, the City's complaint that plaintiffs failed to properly plead a cause of action alleging that fireworks displays are an ultrahazardous activity is deemed waived. *Alimissis v. Nanos*, 171 Ill. App. 3d 1005, 1009, 525 N.E.2d 1133 (1988). Accordingly, notwithstanding any deficiency in plaintiffs' pleadings, we will address this issue.

■ Illinois courts have either implicitly or explicitly adopted the Restatement (Second) of Torts (Restatement) in analyzing whether an activity should be considered ultrahazardous. See *Miller v. Civil Constructors, Inc.*, 272 Ill. App. 3d 263, 269, 651 N.E.2d 239 (1995); *Continental Building Corp. v. Union Oil Co.*, 152 Ill. App. 3d 513, 516, 504 N.E.2d 787 (1987); *Fallon v. Indian Trail School, Addison Township School District No. 4*, 148 Ill. App. 3d 931, 933, 500 N.E.2d 101 (1986). Section 519 of the Restatement states the following principle: "One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting

from the activity, although he has exercised the utmost care to prevent the harm." Restatement (Second) of Torts § 519 (1977). Section 520 sets forth the following factors to be considered in determining whether an activity is abnormally dangerous or ultrahazardous:

"(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes." Restatement (Second) of Torts § 520 (1977).

"The terms 'ultrahazardous,' 'abnormally dangerous,' or 'intrinsically dangerous,' as traditionally used, refer to that type of danger which is inherent in the instrumentality itself at all times and do not mean danger which arises from mere casual or collateral negligence of others with respect to it under the particular circumstances." *Fallon*, 148 Ill. App. 3d at 935. The *Miller* court, in holding that the use of firearms is not an ultrahazardous activity, described the following approach in analyzing whether an activity should be considered ultrahazardous:

"While all of these [Restatement] factors are important and should be considered, ordinarily the presence of more than one factor, but not all of them, will be necessary to declare the activity ultrahazardous as a matter of law so as to hold the actor strictly liable. The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability even though the activity is carried on with all reasonable care. [Citation.] Considerations of public policy also enter prominently into the decisions by our courts to impose strict liability (at least in product liability cases). [Citation.] Particular consideration is also given to the appropriateness of the activity to the place where it is maintained, in light of the character of the place and its surroundings ***." *Miller*, 272 Ill. App. 3d at 270.

■ Based on the factors listed in section 520 of the Restatement, we find that the displaying of fireworks is not an ultrahazardous activity. While plaintiffs argue that because the detonation of explosives has been found to be ultrahazardous and fireworks are a form of explosives, therefore this court should find that fireworks displays constitute an ultrahazardous activity, this comparison alone is not enough

to support a finding that a fireworks display is an ultrahazardous activity under an analysis of the factors listed in section 520 of the Restatement. While factors (a) and (b) of the Restatement are arguably met because there exists a high degree of risk of some harm to a person during a fireworks display, and the likelihood that the harm that results from it will be great because of the explosive nature of fireworks, the other factors listed in the Restatement are not met. Under factor (c), the exercise of reasonable care in displaying fireworks will significantly reduce the risks involved. Moreover, section (c) does not require the reduction of *all* risk and, indeed, there exists significant risk using a firearm, an activity that this court has previously determined is not an ultrahazardous activity. *Miller*, 272 Ill. App. 3d at 270-71. Under factor (d), while displaying fireworks is not a common activity undertaken by a large number of individuals, certainly many individuals view them and many municipalities display fireworks. Thus, fireworks displays *are* a matter of common usage. Under factor (e), we assume that the location was appropriate for the fireworks display in the absence of factual allegations in plaintiffs' complaint specifically describing the area as inappropriate for fireworks displays. See *Miller*, 272 Ill. App. 3d at 271. Lastly, we determine, based on the fact that the general public enjoys fireworks displays to celebrate every July 4, they are of some social utility to communities. Therefore, we find that the value of the fireworks display is not outweighed by its dangerous attributes. Accordingly, we find that a fireworks display is not an ultrahazardous activity as a matter of law.

We also reject plaintiffs' argument that the absolute liability that attaches to employers or property owners who authorize inherently dangerous activity is directly analogous to the operation of the ultrahazardous doctrine. Plaintiffs argue that because property owners have been found vicariously liable for fireworks displays on their property, this court should find that the display of fireworks is an ultrahazardous activity. We find that the analysis utilized under the "inherently dangerous activity" as it relates to property owners, however, is not substantially similar to the analysis utilized under the ultrahazardous doctrine. The "inherently dangerous activity" doctrine is analyzed under section 427 of the Restatement, which provides:

> "One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger." Restatement (Second) of Torts § 427 (1965).

This doctrine is clearly distinct from the ultrahazardous activity doctrine set forth in section 520 of the Restatement because while an activity may be considered inherently dangerous, the imposition of strict liability under an ultrahazardous activity theory may not be warranted in certain situations. See *Miller*, 272 Ill. App. 3d at 270 (where the court stated that the use of firearms has been classified as highly dangerous but their use does not constitute an ultrahazardous activity). In addition, liability under section 427 can be avoided by taking reasonable precautions against the danger, whereas under the ultrahazardous doctrine, reasonable precautions will not preclude the imposition of liability.

We further reject plaintiffs' argument that because the Illinois legislature has imposed regulations on the use of fireworks and other jurisdictions have found fireworks displays to be an ultrahazardous activity, this court should also find such activity to be considered ultrahazardous. Plaintiffs' argument that the Illinois legislature has regulated the use of fireworks, however, supports the opposite conclusion. While plaintiffs are correct in stating that under the Fireworks Regulation Act (425 ILCS 30/1 *et seq.* (West 1992)), and the Fireworks Use Act (425 ILCS 35/1 *et seq.* (West 1992)), the Illinois legislature has regulated the use of fireworks, the legislature did not, when passing these acts, determine that the displaying of fireworks should be considered ultrahazardous, and we also, as discussed above, do not find them ultrahazardous.

We further briefly note that we find plaintiffs' contention, that other jurisdictions have found the displaying of fireworks to be an ultrahazardous activity, unpersuasive. As the City argues, only one jurisdiction has explicitly found that such activity is ultrahazardous. See *Klein v. Pyrodyne Corp.*, 117 Wash. 2d 1, 810 P.2d 917 (1991). We decline to follow *Klein*, and disagree with that court's determination that the risk involved in fireworks displays cannot be sufficiently reduced and that the value of fireworks displays to the community does not outweigh their dangerous attributes. While the other jurisdictions that plaintiffs cite do state that fireworks are *dangerous*,[2] such a determination is not enough to find that the displaying of fireworks is an ultrahazardous activity.

We also briefly note that plaintiffs' reliance on *Clark*, in support of its argument that *Clark* "declare[s] a rule that has been referred to as an 'ultrahazardous exception' to the Tort Immunity Act," *i.e.*, "a mu-

---

[2]See *Hughes v. Star Homes, Inc.*, 379 So. 2d 301 (Miss. 1980); *Alpha Enterprises, Inc. v. City of Houston*, 411 S.W.2d 417 (Tex. Civ. App. 1967); *Riley v. McGee*, 427 So. 2d 509 (La. Ct. App. 1983).

nicipal entity can be held liable for injury resultant from inherently dangerous or ultrahazardous activity whether performed by an employee or independent contractor" (*Clark*, 88 Ill. App. 3d at 764), is misplaced. The *Clark* court held that the City of Chicago was held strictly liable to the plaintiff for injuries suffered after a piece of crane, which was being used to demolish a building, fell on the plaintiff. In so holding, the *Clark* court found that sections 2—109, 2—201, 2—202, 2—206 and 3—108 of the Tort Immunity Act were inapplicable to the accident. Finding no provision of the Act applied, the *Clark* court relied on the common law. Here, the City's actions do fall under a provision of the Act, namely, section 4—102.

■ Lastly, we briefly note that plaintiffs failed to set forth the standard of review in their brief and merely stated at the conclusion of the brief that "summary judgment is a drastic remedy which should not be employed unless the movant's right is clear and free from doubt" and that "[t]he case at bar falls very short of that standard"; plaintiffs' arguments were structured upon their contentions that the trial court incorrectly interpreted the law and its "interpretation of the City's activities" was not justified by the record. Notwithstanding plaintiffs failure to specifically argue that genuine issues of material fact existed precluding summary judgment, we find, based on our decision in this cause, that in fact no genuine issues of material fact existed and that the trial court properly granted summary judgment.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

McNAMARA and CERDA, JJ., concur.